IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| PAMELA CHAMBLISS and SCOTT ADAMSON, individually and on behalf of all others similarly situated, | )<br>)<br>) Case No. _____ |
| Plaintiffs, | )<br>) **JURY TRIAL DEMANDED** |
| v. | ) |
| CAREFIRST, INC., a Maryland corporation, CAREFIRST OF MARYLAND, INC., a Maryland Corporation, and DOES 1-10, | )<br>)<br>) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs, Pamela Chambliss and Scott Adamson (each a "Plaintiff" and, collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, make the following allegations and claims for their complaint against CareFirst, Inc., CareFirst of Maryland, Inc. (d/b/a CareFirst Blue Cross Blue Shield), and Does 1-10 (all collectively "CareFirst"). The following allegations are made upon information and belief, except as to allegations specifically pertaining to each Plaintiff, which are made upon knowledge.

## NATURE OF THE ACTION

1. This is a consumer class action brought on behalf of Plaintiffs, individually and on behalf of all those similarly situated, and against CareFirst, to recover for CareFirst's failure to adequately secure the computer hardware storing CareFirst's customers' personal information, including Plaintiffs' and class members' personal information including names, birth dates, email

1

addresses and subscriber identification number. ("PI").[1] CareFirst announced the breach of its database on or about May 20, 2015.

## PARTIES

2. Plaintiff Pamela Chambliss is an individual residing in Middle River, Maryland and is a citizen of the State of Maryland.

3. Plaintiff Scott Adamson is an individual residing in Dover, Delaware and is a citizen of the State of Delaware.

4. Defendant CareFirst, Inc. is a Maryland corporation with its headquarters in Baltimore, Maryland and is a citizen of the State of Maryland.

5. Defendant CareFirst of Maryland, Inc. is also a Maryland corporation and it is a unit or subsidiary of Defendant CareFirst, Inc. Defendant CareFirst of Maryland, Inc. has its headquarters in Owings Mills, Maryland, is a citizen of the State of Maryland, and operates under the tradename of CareFirst BlueCross BlueShield.

6. The true names and capacities of Does 1-10 are unknown. Plaintiffs are informed and believe that each of the Defendants named herein as a Doe is legally responsible for the events referred to in this Complaint and proximately caused the damages to Plaintiffs and the proposed class members. Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities of the fictitiously named defendants when such have been ascertained.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of

---

[1] It is unclear whether any medical records were part of the data involved in the breach although CareFirst has claimed that "medical claims" were not part of the breach. *See,* http://www.carefirstanswers.com/.

interest and costs. At least one Plaintiff and Defendant are citizens of different states. There are more than 100 putative class members. CareFirst is a regional health care insurer offering its products to employers principally in the District of Columbia, Maryland, and Virginia and, thus, class members will be citizens principally of the District of Columbia, Maryland, and Virginia and surrounding states.

8. This Court has personal jurisdiction because Defendants CareFirst, Inc. and CareFirst of Maryland, Inc. are each Maryland corporations and each has its principal place of business in this District and, thus, both are citizens of the state of Maryland.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because CareFirst, Inc. and CareFirst of Maryland, Inc.'s principal places of business are in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

10. CareFirst is a large for-profit managed health care conglomerate offering health insurance products principally in the States of Maryland and Virginia, and the District of Columbia metropolitan area.

11. Each of the named Plaintiffs has or has had health insurance issued by CareFirst, and thus, through this relationship, CareFirst required or compelled Plaintiffs to provide confidential medical information and PI to CareFirst.

12. CareFirst claims that on or about May 20, 2015 it discovered a massive data breach that compromised the confidential PI of approximately 1.1 million individuals.[2]

---

[2] CareFirst has admitted that the data breach resulted in the loss of its customers' PI. CareFirst has, to date, not stated with clarity whether its customers' personal medical and health care information was breached.

13. News of the data breach was first published by the New York Times in an article dated May 20, 2015. *See*, http://www.nytimes.com/2015/05/21/business/carefirst-discloses-data-breach-up-to-1-1-million-customers-affected.html?_r=0 (last visited August 4, 2015).

14. On the same date, May 20, 2015, CareFirst issued a public statement acknowledging the data breach as well as an earlier data breach in June 2014.

15. The breach involves the theft of information stored on various computers and data storage devices, and according to CareFirst, it potentially involves scores of records. Upon information and belief, CareFirst did not encrypt the PI in its possession and was viewed as a "soft target" by hackers.

16. The information stolen from CareFirst, including Plaintiffs' and Class members' PI, is extremely valuable to thieves. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."

17. PI such as that stolen in the CareFirst data breach is highly coveted by and a frequent target of hackers. Legitimate organizations and the criminal underground alike recognize the value of such data. Otherwise, they would not pay for or maintain it, or aggressively seek it. Criminals seek personal information of consumers because they can use biographical data to perpetuate more and larger thefts.

18. The ramifications of CareFirst's failure to keep Plaintiffs' and class members' personal information secure are severe. Identity thieves can use PI such as that pertaining to Plaintiffs and the class members, which CareFirst failed to keep secure, to perpetuate a variety of crimes that harm the victims. For instance, identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver's license or identification card in the victim's name

but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent tax refund. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

19. In addition, identity thieves may obtain medical services using Plaintiffs' confidential health information and PI, or commit any number of frauds, such as obtaining a job or procuring housing.

20. The data breach at issue in this case occurred despite the fact that CareFirst was on notice of its security problems. In 2014, CareFirst became aware of an attempted data breach occurring in June 2014, which effort was discovered by Mandiant Security Consulting, a division of FireEye, Inc., a computer hacking expert hired in 2014 by CareFirst. Nonetheless, CareFirst has apparently failed to correct its security deficiencies, resulting in the current breach.

21. Plaintiffs and the class members had and have a reasonable expectation that their confidential PI and confidential health information would remain private and confidential. As a result of CareFirst's deficient practices, Plaintiffs and the class members have been damaged, and have lost or are subject to losing money and property as a result of CareFirst's substandard security practices.

## PLAINTIFFS' FACTUAL ALLEGATIONS

22. From 2005 to 2015, Plaintiff Chambliss was insured by CareFirst through her employment with the State of Maryland. Plaintiff received notice of the breach from CareFirst via letter dated May 22, 2015, but first learned of the CareFirst data breach through the media.

23. From approximately 1975 to present, Plaintiff Adamson has been insured with CareFirst. Plaintiff Adamson did receive notice of the breach from CareFirst but first learned of the CareFirst data breach through the media.

24. Plaintiffs' confidential PI (and potentially their confidential medical information) was compromised in and as a result of the CareFirst data breach. Plaintiffs were harmed by having their personal information compromised and they face the imminent and certainly impending threat of future additional harm from the increased threat of identity theft and fraud due to their personal information potentially being sold on the Internet black market and/or misused by criminals.

## CLASS ACTION ALLEGATIONS

25. Pursuant to Fed. R. Civ. P. 23, Plaintiffs assert common law claims for negligence (Count I), breach of implied contract (Count II), unjust enrichment (Count III), and declaratory judgment (Count IV) on behalf of a nationwide class, defined as follows:

> **Nationwide Class:**
> **All individuals and entities in the United States whose personal information was compromised as a result of the data breach first disclosed by CareFirst in May 2015.**

26. As alleged herein, CareFirst is headquartered in Baltimore, Maryland. CareFirst's conduct resulting in the CareFirst data breach took place exclusively, or primarily, in Maryland. Accordingly, this Court has general jurisdiction over CareFirst and original jurisdiction over Plaintiff's claims. Applying Maryland law, therefore, comports with due process.

27. Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims for negligence (Count I), breach of implied contract (Count II), unjust enrichment (Count III), and declaratory judgment (Count IV) under the laws of the individual States and Territories of the United States, and on behalf of separate statewide classes, defined as follows:

**Statewide [Negligence, Breach of Implied Contract, Unjust Enrichment, or Declaratory Judgment] Classes:**
All individuals and entities in [name of State] whose personal information was compromised as a result of the data breach first disclosed by CareFirst in May 2015.

28.  Pursuant to Fed. R. Civ. P. 23, Plaintiff Chambliss ("Maryland Plaintiff") asserts a claim under the Maryland Personal Information Protection Act, Maryland Code, Commercial Law section 14-3503, and the Maryland Consumer Protection Act, Maryland Code, Commercial Law section 13-101, et seq. (Count V), on behalf of a Maryland class defined as follows:

**Maryland Class:**
All individuals and entities in Maryland whose personal information was compromised as a result of the data breach first disclosed by CareFirst in May 2015.

29.  Excluded from each of the above Classes are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

30.  Each of the proposed classes meet the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3):

31.  **Numerosity.** The proposed classes include hundreds of thousands of individuals whose data was compromised in the data breach. While the precise number of Class members in each proposed class has not yet been determined, the massive size of the CareFirst data breach indicates that joinder of each member would be impracticable.

32.  **Commonality.** Common questions of law and fact exist and predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

(a) Whether CareFirst unlawfully used, maintained or disclosed Class members' confidential health information and/or PI;

(b) Whether CareFirst unreasonably delayed notifying affected customers of the data breach;

(c) Whether CareFirst failed to implement and maintain reasonable security procedures and practices appropriate to the sensitive nature of the information compromised in the data breach, including but not limited to CareFirst's failure to encrypt the sensitive and confidential information;

(d) Whether CareFirst's conduct was negligent and/or grossly negligent;

(e) Whether CareFirst's conduct was reckless;

(f) Whether CareFirst acted willfully and/or with oppression, fraud or malice;

(g) Whether CareFirst's conduct constitutes breach of implied contract;

(h) Whether Plaintiffs and the Class are entitled to damages, civil penalties, punitive damages and/or equitable and injunctive relief.

33. **Typicality.** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were injured through CareFirst's uniform misconduct and their legal claims arise from the same core CareFirst practices.

34. **Adequacy.** Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs' counsel are very experienced in litigating consumer class actions and complex commercial disputes.

35. **Superiority.** A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. The injury sustained by each Class member, while meaningful

on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against CareFirst. Even if it were economically feasible, requiring hundreds of thousands of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

36. Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). CareFirst has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

37. Finally, all members of the purposed Classes are readily ascertainable. CareFirst has access to addresses and other contact information for hundreds of thousands of members of the Classes, which can be used to identify Class members.

## COUNT I

## NEGLIGENCE

### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE NEGLIGENCE CLASSES)

38. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

39. CareFirst came into possession, custody, and/or control of confidential health information and/or PI of Plaintiffs and Class members.

40. CareFirst owed a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding and securing the confidential health information and/or PI of Plaintiffs and Class members in its possession, custody, and/or control.

41. CareFirst had a duty to exercise reasonable care in implementing and maintaining reasonable procedures and practices appropriate for maintaining the safety and security of Plaintiffs and Class members' confidential health information and/or PI in its possession, custody, and/or control.

42. CareFirst had a duty to exercise reasonable care in timely notifying Plaintiffs and Class members of an unauthorized disclosure of Plaintiffs and Class members' confidential health information and/or PI in its possession, custody, and/or control.

43. CareFirst, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in safeguarding and securing the PI (and potentially confidential health information) of Plaintiffs and Class members in its possession, custody, and/or control.

44. CareFirst, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in implementing and maintaining reasonable procedures and practices appropriate for maintaining the safety and security of Plaintiffs' and Class members' PI (and potentially confidential health information) in its possession, custody, and/or control.

45. CareFirst, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in timely notifying Plaintiff and Class members of an unauthorized disclosure of Plaintiffs and Class members' PI (and potentially confidential medical information) in its possession, custody, and/or control.

46. CareFirst's negligent and wrongful breach of duties it owed to Plaintiffs and Class members proximately caused an unauthorized disclosure of Plaintiffs' and Class members' PI (and potentially confidential health information) in its possession, custody, and/or control.

47. As a direct and proximate result of CareFirst's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II

### BREACH OF IMPLIED CONTRACT

### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE BREACH OF IMPLIED CONTRACT CLASSES)

48. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

49. Plaintiffs and the Class members relied upon CareFirst's representations regarding privacy and security before purchasing health services and products.

50. By entering into agreements with Plaintiffs and Class members, either directly or with Class members as third party beneficiaries under employer-sponsored health insurance, CareFirst imposed upon itself an obligation to use reasonable and industry-standard security practices and procedures to protect Plaintiffs' and Class members' data and personal information.

51. Plaintiffs and the Class members performed their obligations.

52. Plaintiffs and the Class members paid for, but never received, the security protections to which they were entitled.

53. As a direct and proximate result of CareFirst's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III

## UNJUST ENRICHMENT

### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE UNJUST ENRICHMENT CLASSES)

54. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

55. Plaintiffs and Class members directly or indirectly conferred a monetary benefit on CareFirst in the form of monies paid for the purchase of health insurance and other services from CareFirst during the period of the data breach.

56. CareFirst appreciates or has knowledge of the benefits conferred directly upon it by Plaintiffs and members of the Class.

57. The monies paid for the purchase of health insurance and other services by Plaintiffs and members of the Class to CareFirst during the period of the data breach were supposed to be used by CareFirst, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiffs and members of the Class.

58. CareFirst failed to provide reasonable security, safeguards and protection of the PI (and potentially confidential health information) of Plaintiffs and Class members and as a result, Plaintiffs and Class members overpaid CareFirst for the services purchased.

59. Under principles of equity and good conscience, CareFirst should not be permitted to retain the money belonging to Plaintiffs and members of the Class, because CareFirst failed to provide adequate safeguards and security measures to protect Plaintiffs' and Class members' PI (and potentially confidential health information) that they paid for but did not receive.

60. Plaintiffs and the Class have conferred directly upon CareFirst an economic benefit in the nature of monies received and profits resulting from sales and unlawful overcharges to the economic detriment of Plaintiffs and the Class members.

61. The economic benefit, including the monies paid and the overcharges and profits derived by CareFirst and paid by Plaintiffs and members of the Class, is a direct and proximate result of CareFirst's unlawful practices as set forth in this Complaint.

62. The financial benefits derived by CareFirst rightfully belong to Plaintiffs and members of the Class.

63. A constructive trust should be imposed upon all unlawful or inequitable sums received by CareFirst traceable to Plaintiffs and the Class.

64. Plaintiffs and the Class have no adequate remedy at law.

## COUNT IV

## DECLARATORY JUDGMENT

**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE NEGLIGENCE AND BREACH OF IMPLIED CONTRACT CLASSES)**

65. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

66. As previously alleged, Plaintiffs and members of the Breach of Implied Contract classes entered into an implied contract that required CareFirst to provide adequate security for the PI it collected and retained on its computers. As previously alleged, CareFirst owes duties of care to Plaintiffs and the members of the nationwide class or, alternatively, the separate statewide Negligence classes, that require it to adequately secure PI.

67. CareFirst still possesses PI regarding Plaintiffs and the Class members.

68.    Actual harm has arisen in the wake of CareFirst's data breach regarding its contractual obligations and duties of care to provide security measures to Plaintiffs and the members of the Breach of Implied Contract and Negligence Classes.

69.    Plaintiffs, therefore, seek a declaration (a) that CareFirst's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (b) that to comply with its contractual obligations and duties of care, CareFirst must implement and maintain reasonable security measures, including, but not limited to: (i) ordering that CareFirst engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on CareFirst's systems on a periodic basis, and ordering CareFirst to promptly correct any problems or issues detected by such third-party security auditors; (ii) ordering that CareFirst engage third-party security auditors and internal personnel to run automated security monitoring; (iii) ordering that CareFirst audit, test, and train its security personnel regarding any new or modified procedures; (iv) ordering that CareFirst segment customer data by, among other things, creating firewalls and access controls so that if one area of CareFirst is compromised, hackers cannot gain access to other portions of CareFirst's systems; (v) ordering that CareFirst purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services; (vi) ordering that CareFirst conduct regular database scanning and securing checks; (vii) ordering that CareFirst routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (viii) ordering CareFirst to meaningfully educate its customers about the threats they face as a result of the loss of their personal information to third parties, as well as the steps CareFirst customers must take to protect themselves.

## COUNT V

### VIOLATION OF MARYLAND PERSONAL INFORMATION PROTECTION ACT, MARYLAND COMMERCIAL CODE § 14-3501, *ET SEQ.*

### (ON BEHALF OF MARYLAND PLAINTIFF AND THE MARYLAND CLASS)

70. Maryland Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

71. The data breach constituted a "breach of the security of a system" within the meaning of Maryland Commercial Code § 14-3504 (a) (1) which is viewed as an unfair or deceptive trade practice. See, Maryland Commercial Code § 14-3508.

72. CareFirst negligently and recklessly failed to provide reasonable and adequate security measures. CareFirst also unreasonably delayed informing the Maryland Plaintiff and Maryland Class members about the security breach of Maryland plaintiff's and Maryland Class members' PI (and potentially confidential health information) after CareFirst knew the data breach had occurred.

73. As a result of CareFirst's conduct, Maryland Plaintiff and the Maryland Class members will incur economic damages related to the expenses for credit monitoring and the loss associated with paying for health services they believed were purchased through secure transactions. Maryland Plaintiff and the Maryland Class members would not have purchased the health insurance and other services had they known that their PI would be compromised.

### PRAYER FOR RELIEF

On behalf of themselves and the Class set forth, Plaintiffs requests the Court order relief and enter judgment against Defendants and enter an order:

A. certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and, pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiffs to be Class representatives and their undersigned counsel to be Class counsel;

B. awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages, restitution and disgorgement;

C. awarding pre-judgment and post-judgment interest;

D. requiring Defendant to pay for notifying the Class of the pendency of this action

E. requiring Defendant to pay Plaintiffs and Class members reasonable attorneys' fees, expenses, prejudgment interest and the costs of this action; and

F. providing all other and further relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 6, 2015

Respectfully submitted,

/s/
_____
Price O. Gielen
**NEUBERGER, QUINN, GIELEN,**
**RUBIN & GIBBER, P.A.**
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8584
Facsimile: (410) 332-8561
Email: pog@nqgrg.com

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com

Cornelius P. Dukelow*
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (telephone & facsimile)
cdukelow@abingtonlaw.com
www.abingtonlaw.com

* Admission *pro hac vice* to be sought
*Attorneys for Plaintiffs*